George J. Vogrin, Esq. (CSB #264342)
gvogrin@vogrinfrimet.com
Craig G. Kline, Esq. (CSB # 086252)
ckline@vogrinfrimet.com
**VOGRIN & FRIMET, LLP**
9465 Wilshire Blvd, Suite 300
Beverly Hills, California 90210
Phone: (212) 513-1075
Fax:  (212) 409-8338

Attorneys for Plaintiff,
Ironshore Specialty Insurance Company Individually
and as Assignee of H&R Construction Surfacing, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY INDIVIDUALLY AND AS ASSIGNEE OF H&R CONSTRUCTION SURFACING, INC., <br><br>            Plaintiff, <br><br> v. <br><br> EVEREST INDEMNITY INSURANCE COMPANY, <br><br>            Defendant. | Case No.: 2:20-cv-01652 <br><br> **COMPLAINT FOR DAMAGES & DECLARATORY RELIEF:** <br><br> **1. DUTY TO DEFEND/INDEMNIFY – AS TO PNR** <br> **2. DUTY TO DEFEND/INDEMNIFY – AS TO AVOCA, COLEMAN, CONTRACTORS AND SUBCONTRACTORS** <br> **3. EQUITABLE CONTRIBUTION** <br> **4. BREACH OF CONTRACT - ASSIGNEE OF H&R CONSTRUCTION AND SURFACING, INC.'S RIGHTS AGAINST EVEREST** <br> **5. CALIFORNIA INSURANCE CODE §11580 ACTION** <br><br> **[JURY TRIAL REQUESTED]** |

Plaintiff, Ironshore Specialty Insurance Company Individually and as Assignee of H&R Construction Surfacing, Inc. ("Ironshore"), alleges and avers the following for its complaint against Defendant, Everest Indemnity Insurance Company ("Everest"), as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and more than $75,000 is in controversy.

2. This Court has personal jurisdiction over Everest by virtue of Everest's regular and continuous transaction of business within the State of California and within this jurisdictional district. In addition, the underlying activities that give rise to the action occurred within this judicial district.

3. Venue is proper in this jurisdictional district and division pursuant to 28 U.S.C. § 1391 (b)(2) as a substantial part of the events or omissions giving rise to the action occurred in this judicial district.

## PARTIES

4. Ironshore Specialty Insurance Company, a foreign corporation or other business entity eligible to do business in the State of New York and actually doing business in the State of New York, with its principal place of business located at 75 Federal Street, 5th Floor, Boston, MA 02110 ("Ironshore") is a citizen of Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1).

5. Everest Indemnity Insurance Company, a corporation with its Home Office located at 477 Martinsville Road P.O. Box 830, Liberty Corner, NJ 07938 ("Everest") is a citizen of New Jersey within the meaning of 28 U.S.C. § 1332(c)(1).

## OVERVIEW

6. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 seeking a declaration of the parties' rights, duties and obligations in connection with contractual obligations owed by Everest to Pacific Northstar Reeves, LLC ("PNR"), Avoca USA, Inc. ("Avoca") and any other insureds (including the subcontractors).

7. This also is an equitable contribution action against Everest to recover defense costs and indemnity Ironshore paid in connection with a claim against PNR and Avoca, mutual insureds of Ironshore and Everest. Equitable principles dictate that Everest should have contributed at least 50% of the total costs of PNR and Avoca's defense and indemnity. Despite its obligation to do so, Everest unjustifiably refused to contribute anything towards the $200,000 total paid to settle the underlying action on behalf of PNR and Avoca. Ironshore, in order to protect its interests and the interests of the insurers' mutual insured, provided PNR and Avoca

with a defense at a cost of $1,200,000 and expended $200,000 to settle the underlying action on behalf of PNR and Avoca. Accordingly, Ironshore is entitled to equitable contribution from Everest in an amount in excess of $1,400,000 including costs, interest and attorneys fees.

8. Further, Ironshore is both Judgment Creditor and Assignee of Rights against Everest Based on a Judgment obtained and an explicit assignment of rights from H&R Construction Surfacing, Inc. ("H&R") and is entitled to a further judgment of $1,236,720.98 including costs, interest and attorneys fees.

## FACTUAL ALLEGATIONS

9. As described more fully below the genesis of this dispute is a project known as Maison Reeves located in Beverly Hills, California. PNR was the developer of this luxury condominium community (hereinafter referred to as "the Project") located at 261 Reeves Drive in the City of Beverly Hills, County of Los Angeles, State of California. Attached hereto as ***Exhibit "A"*** is a true and accurate copy of Thomas Henry Coleman's Declaration dated March 22, 2012, filed in Case No. BC 388637 in Superior Court of California, Los Angeles County – Central District. Attached hereto as ***Exhibit "B"*** is a true and accurate copy of the Complaint for Damages dated September 26, 2014, filed in Case No. BC 558992 in Superior Court of California, Los Angeles County. Attached hereto as ***Exhibit "C"*** is a true and accurate copy of the First Amended Complaint for Damages dated March 4, 2016, filed in Case No. BC 610856 in Superior Court of California, Los Angeles County. See ***Exhibit "A,"*** ¶ 3; ***Exhibit "B,"*** ¶ 1-7; ***Exhibit "C,"*** ¶ 2 & 19).

10. During the initial construction phase, the project was insured under Wrap Policy No. 5000000372-031 issued by Everest. The original Everest policy period extended three years from October 31, 2003 to October 31, 2006. Everest Wrap Policy insured to PNR covered PNR, Avoca and Coleman and/or any contractors, subcontractors or other entities involved in the subject project including H&R Construction Surfacing, Inc. The initial premium paid was approximately $550,000. Attached hereto as ***Exhibit "D"*** is a true and accurate copy of Wrap Policy No. 5000000372-031 issued by Everest.

11. On or about September 18, 2008, Thomas Henry Coleman (hereinafter referred to as "Coleman") was appointed, pursuant to California Superior Court Case No. BC 388637, and served as Receiver for PNR, to oversee completion of the distressed project. Attached hereto as ***Exhibit "E"*** is a true and accurate copy of the Order dated September 18, 2008.

12. On information and belief, based upon Everest's repudiation of its coverage, Mr. Coleman approached Ironshore to purchase additional "wrap" coverage. On or about August 19, 2009, Ironshore issued Policy No. 01CC10905001 to Coleman for the Project (hereinafter "the Controlling Underlying Policy"). Policy No. 01CC10905001 is a wrap policy with an effective term of coverage of June 23, 2009 to June 23, 2010. The Named Insureds are Thomas Henry Coleman, Receiver, Pacific Northstar Reeves, LLC (Developer), and Avoca USA (General Contractor). Attached hereto as ***Exhibit "F"*** is a true and accurate copy of the Evidence of Insurance for Policy No. 01CC10905001.

13. On or about October 7, 2009, Ironshore issued policy No. 01CC10905002 (hereinafter "the Excess Policy") to Coleman for the Project. Policy No. 01CC10905002 is an excess policy with an effective term of coverage of June 23, 2009 to June 23, 2010. Attached hereto as ***Exhibit "G"*** is a true and accurate copy of the Evidence of Insurance for Policy No. 01CC10905002.

14. On or about September 29, 2011 Perry E. Rhoads of Robert Smylie & Associates sent a tender letter to Everest with respect to the construction claim defects asserted by the HOA. Attached hereto as ***Exhibit "H"*** is a true and accurate copy of the September 29, 2011 tender letter to Everest.

15. On or about September 19, 2013, Attorney Brent M. Finch, Esq. of Finch Law, representing the HOA, delivered to Attorney Peter Pritchard, Esq. of Robert Smylie and Associates (hereinafter referred to as "Pritchard"), representing PNR and Coleman, a notice of a claim asserted by the HOA against Coleman, Receiver for PNR, for alleged construction and/or design defects at the Maison Reeves condominium community, the Project. Attached hereto as ***Exhibit "I"*** is a true and accurate copy of the September 19, 2013 notice of claim letter.

16. On or about October 1, 2013, Pritchard submitted a New Claim/Tender of Defense in the Maison Reeves Homeowners' Association v. Thomas Henry Coleman, Receiver; Pacific Northstar Reeves, LLC et al. matter to Certus Claim Administration, LLC for alleged construction defect claims only and apparently only on behalf of Coleman and PNR. Attached hereto as *Exhibit "J"* is a true and accurate copy of the October 1, 2013 New Claim/Tender of Defense letter.

17. Pritchard provided Everest with an April 8, 2014 notice of claim followed by a May 29, 2014 correspondence concerning the claim against Coleman. Attached hereto as *Exhibit "K"* is a true and accurate copy of the April 8, 2014 notice of claim letter; attached hereto as *Exhibit "L"* is a true and accurate copy of the May 29, 2014 letter regarding the claim against Coleman.

18. On or about September 26, 2014, the HOA filed a complaint in the Superior Court of the State of California, County of Los Angeles Case No. BC 558992, captioned Maison Reeves Homeowner's Association vs. Pacific Northstar Property Group, LLC, et al. (hereinafter "the Underlying Action"). The complaint alleges multiple construction defects, which contributed to a wide array of water damages. The preliminary list of construction standards' violations includes issues with drainage-sumps, path of travel, structural slabs in garage, podium deck waterproofing, garage wall waterproofing, balcony waterproofing, roofing, rated doors, finishes, stucco screed, tile-exterior, paint and rated vents. Attached hereto as *Exhibit "M"* is a true and accurate copy of the HOA Complaint in Case No BC 558992.

19. On January 20, 2015, Everest responded to the tender made by Pritchard with a denial letter stating, "Everest has no duty to defend or indemnify the insured in the Maison Reeve HOA litigation, as there is no products-completed operations coverage during the policy period." Attached hereto as *Exhibit "N"* is a true and accurate copy of the January 20, 2015 letter response to the tender.

20. H&R sent a letter of tender to Everest. Everest did not agree to provide a defense or indemnity nor even meaningfully responded to the tender request.

21.     On April 3, 2015 because PNR is currently a suspended corporation, Ironshore filed a complaint in intervention in Case No BC 558992. Attached hereto as **Exhibit "O"** is a true and accurate copy of Ironshore's Intervention Complaint filed in Case No BC 558992.

22.     Despite repeated requests by Ironshore to do so, Everest did not contribute any amounts to PNR and Avoca's defense in the Underlying Action, and Ironshore funded their entire defense.

23.     On or about October 9, 2015 the HOA sent a letter to Ironshore demanding that Ironshore settle the matter with respect to the claims made under Controlling Underlying Policy No. 01CC10905001 and Excess Policy No. 01CC10905002. Attached hereto as **Exhibit "P"** is a true and accurate copy of the tentative decision denying motion for appointment of entity for insurance.

24.     On February 18, 2016, the HOA filed a separate action against the project general contractor, Avoca USA, Inc. related to the same project and defects alleged against the developer. Attached hereto as **Exhibit "Q"** is a true and accurate copy of the HOA's Complaint filed in the Superior Court of the State of California, County of Los Angeles in Case No. BC 610856.

25.     Prior to the trial in the HOA Underlying Litigation, the HOA agreed to settle with and dismiss the action against PNR and Avoca in exchange for a payment by Ironshore of $200,000. Considering all the facts and circumstances, including the potential exposure to PNR and Avoca, the settlement of the Maison Reeve HOA action was reasonable. Attached hereto as **Exhibit "R"** is a true and accurate copy of the Notice of Settlement of Entire Case filed in Case No BC 558992. Attached hereto as **Exhibit "S"** is a true and accurate copy of the Notice of Entry of Dismissal filed in Case No BC 558992.

26.     Notwithstanding its obligations under the Everest Policy and applicable law, and despite Ironshore's request that Everest contribute on an equitable basis, Everest refused to contribute any amount to the $200,000 settlement.

27.     On or about November 17, 2017, as part of a Settlement Agreement between H&R and Ironshore, H&R further agreed to assign to Ironshore any and all rights which H&R

may have against Everest arising out of the Underlying Action including, but not limited to, all claims arising out of or in any way related to H&R's claim for coverage under the Everest policy and any and all claims, causes of action or damages flowing from Everest's actions in relation to such claims, whether founded on contract or tort, to the fullest extent permitted by law. Attached hereto as **Exhibit "T"** is a true and accurate copy of the Settlement Agreement in the HOA v. PNR action for Case No. BC 558992 consolidated with BC 610856 and BC 614531.

28. On December 13, 2017 Ironshore obtained a Judgment for property damage against H&R an insured under the Everest Policy for $1,236,720.98, plus interest at due rate of 10% per anum. Attached hereto as **Exhibit "U"** is a true and accurate copy of the Order Approving the Stipulation for Entry of Judgment Between Intervenor Ironshore (Intervening on Behalf of PNR and Avoca) and H&R Construction Surfacing, Inc., in Case No BC 558992. Attached hereto as **Exhibit "V"** is a true and accurate copy of the Judgment filed in Case No BC 558992.

**FIRST CAUSE OF ACTION**

**Declaratory Relief**

**Duty to Defend/Indemnify as to PNR**

29. Ironshore repeats and reiterates each and every allegation contained in paragraphs "1" through "28" as though fully set forth herein.

30. The liability insurance coverage provided by Everest was in full force and effect on the date upon which the HOA in the underlying action alleges to have sustained damages.

31. The insured under the policy timely demanded that Everest assume its responsibilities and obligations to PNR.

32. Everest failed to comply with its obligation to provide coverage for PNR and has otherwise failed to preform or acknowledge its obligations as an insurer to PNR.

33. Everest failed to properly adjust PNR's claim by failing to properly interpret the Policy and endorsements, and failing to properly process, handle and investigate the claim.

34. As a direct result of Everest's breach of their Policy, PNR has been deprived of the benefits of insurance coverage, for which it paid substantial premiums.

35. Ironshore has suffered and will continue to suffer damages, harm and prejudice by virtue of the failure of Everest to fulfill its obligations to provide insurance coverage to PNR and Avoca pursuant to Everest's policy, including, but not limited to, the costs of defending PNR, Avoca and any other insured parties, in the underlying action and in incurring further expense in settling those actions.

36. Everest is liable to Ironshore for any and all damages incurred by virtue of its breach of contract in that it has failed to live up to its obligations under the Everest policy, including any and all amounts expended to defend PNR, Avoca and other insured parties in the underlying litigation.

37. Wherefore, Ironshore respectfully pray that this Court enter judgment in their favor and against Everest, in the amount of $1,000,000 plus prejudgment interest from January 25, 2016, to the present, costs, and for any and all other further relief that this Court deems necessary and appropriate under the circumstances.

## SECOND CAUSE OF ACTION

### Declaratory Relief

**Duty to Defend/Indemnify as to Avoca, Coleman, Contractors and Subcontractors**

38. Ironshore repeats and reiterates each and every allegation contained in paragraphs "1" through "37" as though fully set forth herein.

39. On information and belief, Everest insured PNR, Avoca and Coleman and/or any contractors, subcontractors or other entities involved in the subject project that may share responsibility, in whole or in part, for any of the damage alleged by the HOA or to contribute to or indemnify defendants PNR, Avoca and/or Coleman for any, or all, of their liability to the HOA.

40. Ironshore is entitled to a declaration that Everest is required to afford primary coverage for the defense and indemnity of PNR and other insured parties pertaining to the underlying lawsuit.

41.     Ironshore is entitled to a declaration that Everest is responsible to defend and indemnify any contractors, sub-contractors or other entities, and to provide coverage and contribute to any claims or settlements based on any claims of contribution or indemnity that may apply.

42.     Ironshore is entitled to a declaration that Everest Policy affords primary coverage for the defense and indemnity of PNR, Avoca and other insured parties pertaining to the underlying lawsuit.

43.     Ironshore is entitled to a declaration that Everest was responsible to defend and indemnify any contractors, sub-contractors or other entities, and to provide coverage and contribute to any claims or settlements based on any claims of contribution or indemnity that may apply.

## THIRD CAUSE OF ACTION

### Equitable Contribution

44.     Ironshore repeats and reiterates each and every allegation contained in paragraphs "1" through "43" as though fully set forth herein.

45.     On information and belief, Everest advised Thomas Henry Coleman as Receiver of PNR that it would decline to provide coverage for any construction defects at the Maison Reeves property. This anticipatory repudiation of its insurance obligation caused Coleman to seek out other insurance from Ironshore.

46.     Ironshore and Everest provided coverage for PNR and Avoca under their respective policies, and each insurer had a duty to defend and indemnify PNR and Avoca in connection with the HOA Underlying Action.

47.     All conditions precedent to coverage under the Everest Policy have been met. Accordingly, Everest was required to contribute equitably with Ironshore for the defense and settlement of the HOA Underlying Action. Equitable principles dictate that Everest should have contributed at least 50% of the total costs of PNR and Avoca's defense and indemnity.

48.     Despite its obligation to defend and indemnify PNR and Avoca, Everest refused to contribute to PNR and Avoca's defense in the HOA Underlying Action, and

refused to contribute any amount to the settlement of the HOA Underlying Action on behalf of PNR and Avoca. Ironshore, in order to protect its interest and the interests of the insurers' mutual insured, provided PNR and Avoca with a defense and funded the $200,000 payment made to settle the HOA Underlying Action on behalf of PNR and Avoca.

49. Equitable contribution apportions costs among insurers when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others. *Safeco Ins. Co. of America v. Superior Court*, 140 Cal. App. 4th 874, 875, 44 Cal. Rptr. 3d 841, 842, 2006 Cal. App. LEXIS 922, *1, 2006 Cal. Daily Op. Service 5462, 2006 Daily Journal DAR 7962.

50. Everest has paid nothing toward PNR and Avoca's defense and settlement in the HOA Underlying Action, in contradiction to what equity and justice demands.

51. The Everest policy coverage preceded Ironshore's policy period thus providing coverage over a longer period of time. Further, Ironshore's policy was only purchased because of Everest's anticipatory repudiation of coverage which became an actual repudiation of coverage once the claim was filed.

52. As fully demonstrated above it is undeniable that the allegation in the Underlying Action brought by the HOA are covered by the terms of the policy issued by Everest to PNR and Avoca as named insured, and thus that Everest owed primary coverage for the defense and indemnity of PNR, Avoca and other insured parties pertaining to the Underlying Action.

53. Ironshore fulfilled its coverage obligations in full and achieved a resolution of the Maison Reeves matter that protected the interests of PNR, Avoca and Coleman. Everest, in bad faith, declined to fulfill any of its contractual obligations. Given Everest's actions, its position as the earlier insurer in time, its anticipatory breach of the insuring agreement, and its bad faith refusal to recognize coverage at any point, equity requires that Everest has an obligation to reimburse Ironshore in full for all amounts paid by Ironshore in defending and settling the Maison Reeves claim.

54. Based on the foregoing, Ironshore is entitled to a judgment awarding to Ironshore all the settlement and defense expenses paid by Ironshore for which Everest is liable as a matter of equity, plus interest thereon.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### Assignee of H&R Construction and Surfacing, Inc.'s Rights Against Everest

55. Ironshore repeats and reiterates each and every allegation contained in paragraphs "1" through "54" as though fully set forth herein.

56. By agreement dated December 4, 2018 Ironshore has an agreed judgment and is the assignee of all rights against Everest by H&R Construction Surfacing, Inc. ("H&R").

57. H&R did duly tender to Everest and Everest declined to defend or indemnify H&R.

58. In every contract of insurance, including the policy issued by Everest, there is an implied covenant of good faith and fair dealing that the insurer will do nothing to unfairly deprive the insured of the benefits of the contract or to place its own interest before the interest of the insured. Everest, was at all times materially bound to said implied covenant of good faith and fair dealing.

59. In the course of denying coverage and failing and/or refusing to pay on H&R's behalf or indemnify H&R, Everest breached the implied covenant of good faith and fair dealing by, among other things:

    a. Failing to fully and thoroughly investigate H&R's claim for coverage;

    b. Delaying resolution of H&R's claim by asserting coverage defenses that were legally and/or factually invalid;

    c. Placing. unduly restrictive interpretations of its policy terms for the purpose of denying coverage due under the policy,

    d. Refusing to pay for or contribute to reasonable settlements that were less than the ultimate judgment against H&R.

    e. Refusing to pay for or contribute to the judgment entered against H&R;

   f. Failing to give H&R's interests equal consideration with its own;

   g. Failing to modify its coverage position as additional information was provided by H&R.

  60. On information and belief, Everest engaged in the above course of conduct for the purpose of placing its own interests above those of H&R, it insured, and of withholding from H&R the rights and benefits to which H&R is entitled under the Everest Policy.

  61. As a proximate result of Everest's breaches, H&R has been damaged in that it has not been afforded the benefit of the policy of insurance for which H&R paid valuable premiums.

  62. Everest, in bad faith declined to defend or indemnify H&R. Everest's conduct as alleged was despicable, oppressive and fraudulent, and was performed with a conscious disregard of H&R's rights, thereby justifying exemplary and punitive damages against Everest in an amount sufficient to punish it for the severity of its conduct, to make an example of it and deter such conduct in the future.

  63. Ironshore has obtained a Judgment for property damage against H&R an insured under the Everest Policy for $1,236,720.98. Such Judgment has been duly entered. H&R was insured by Everest pursuant to the wrap insurance policy. Ironshore is entitled to collect on that judgment as well as all remedies related to or flowing from Everest's bad faith in denying coverage including all costs, interest and attorney fees including the fees related to the enforcement of coverage under the Everest policy.

## FIFTH CAUSE OF ACTION

### California Insurance Code §11580 ACTION

  64. Ironshore repeats and reiterates each and every allegation contained in paragraphs "1" through "63" as though fully set forth herein.

  65. Ironshore has obtained a final Judgment for property damage against H&R an insured under the Everest Policy for $1,236,720.98. Such Judgment has been duly entered and remains unsatisfied.

66.     H&R was insured by Everest pursuant to the wrap insurance policy. Such policy covered H&R for the damages asserted in the Maison Reeves action. Everest denied any obligation to defend or indemnify H&R.

67.     Ironshore is entitled to relief against Everest pursuant to California Insurance Code §11580 for the amount of the judgment plus attorney's fees, costs and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against defendant as follows for all causes of action:

A.     A declaration that the Underlying Action brought by the HOA described in this complaint are covered by the terms of the policy issued by Everest to PNR, Avoca and Coleman as named insureds and that all contractors and subcontractors are also insureds;

B.     A judgment for equitable relief in an amount in excess of $1,400,000 plus interest, costs and attorneys fees;

C.     A judgment as assignee and judgment creditor of H&R Construction and Surfacing, Inc. in the amount of $1,236,720.98 plus interest, costs and attorneys fees.

D.     Any and all other further relief this Honorable Court may deem just and proper, including but not limited to, fees and costs incurred by Ironshore herein, and interest at the legal rate.

Respectfully submitted,

**VOGRIN & FRIMET, LLP**

Date:  February 20, 2020

BY: _____
George L. Vogrin, Esq.
Attorneys for Plaintiff,
IRONSHORE SPECIALTY
INSURANCE COMPANY
INDIVIDUALLY AND AS ASSIGNEE
OF H&R CONSTRUCTION
SURFACING, INC.,